**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**UNITED STATES OF AMERICA**

**VS.**                                          **CRIMINAL NO.: 3:18cr67-CWR-LGI**

**AUBREY MAURICE JORDAN**

## ORDER DENYING MOTION TO DISMISS COUNTS 6 AND 7

Aubrey Jordan has filed a Motion to Dismiss Counts 6 and 7 [Doc. #200], in which he contends that the indictment of him on those two counts fails to include necessary elements of the crimes for which he has been charged and that the Government cannot prove those charges on the basis of the evidence that has been presented thus far.  For the reasons more fully set out below, the Court denies the Motion.

As taken from the Governments statement of facts in response to the Motion to Dismiss, the relevant facts are these:

> On September 21, 2017, and October 9, 2017, a confidential source ("A.F.") for the East Mississippi Drug Task Force ("EMDTF"), working in conjunction with the U.S. Drug Enforcement Administration ("DEA-Jackson"), conducted two controlled purchases of suspected MDMA/Ecstasy pills from Defendant Monroe Hughes ("Defendant Hughes") and Defendant Cortez Byrd ("Defendant Byrd"). While the Government was awaiting results from the DEA Lab, between February 2018, and March 10, 2018, a series of conversations took place between Defendant Hughes, Defendant Byrd and Defendant Jordan, all in an attempt to determine the identity of the informant in the October 2017, drug transaction. On March 10, 2018, Defendant Byrd told an unidentified female not to go out, telling her that he "got something planned" and that he did not need any witnesses. That night, on March 10, 2018, A.F. was shot in the back of the neck at Just Friends nightclub (also known as "JR's lounge") in Meridian, Mississippi.

Based on these events, Aubrey Jordan was charged with several offenses; the charges at issue here are as follows:

**COUNT 6**

That on or about March 10, 2018, in Lauderdale County, in the Northern Division of the Southern District of Mississippi, the defendants, Aubrey Maurice Jordan, Monroe Hughes, III, a/k/a Roe and Cortez LaKeith Byrd, a/k/a Byrd, conspired and agreed with each other, and with others known and unknown to the Grand Jury, to kill A.F., by shooting A.F. with a firearm, with the intent to retaliate against A.F. for providing to a law enforcement officer information relating to the commission or possible commission of a federal offense.

In violation of Title 18, United States Code, Sections 1513(f) and 1513(a)(2)(A).

**COUNT 7**

That on or about March 10, 2018, in Lauderdale County, in the Northern Division of the Southern District of Mississippi, the defendant, Aubrey Maurice Jordan, killed A.F. by shooting A.F. with a firearm, with the intent to retaliate against A.F. for providing to a law enforcement officer information relating to the commission or possible commission of a federal offense.

In violation of Title 18, United States Code, 1513(a)(1)(B) and 1513(a)(2)(A).

Jordan contends that the indictment fails to contain all of the necessary elements of 18 U.S.C. §

1513(a)(1)(B) and (f), which provide:

(a)(1)  Whoever kills or attempts to kill another person with intent to retaliate against any person for—

(B)  providing to a law enforcement officer any information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending juridical proceedings,

Shall be punished as provided in paragraph (2).

. . . .

(f)  Whoever conspires to commit any offense under this section shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.

Count 6 of the indictment charges that Jordan "killed A.F. by shooting A.F. with a

firearm, with the intent to retaliate against A.F. for providing to a law enforcement officer

information relating to the commission or possible commission of a federal offense."  This

language tracks the language of the statute exactly; however, that is not the end of the analysis. Another statute, 18 U.S.C. § 1515, provides definitions for the terms used in § 1513, and defines the term "law enforcement officer" as "an officer or employee of the Federal Government, or a person authorized to act for or on behalf of the Federal Government, or serving the Federal Government as an adviser or consultant" who is authorized to engage in the investigation or prosecution of offenses.  Combining those statutes, it is clear that the Government will have to provide evidence that the law enforcement officer to whom A.F. was providing information was connected to the federal government.

Jordan seeks to add yet another qualifier to the charges against him – that he *knew* that A.F. was providing information to a law enforcement officer connected to the federal government.  As support for that contention, Jordan has provided a case in which this requirement was adopted, in the context of a plea bargain.  *United States v. Denham*, 663 F. Supp. 2d 561, 565 (E.D. Ky. 2009).  *Denham* dealt with 18 U.S.C. § 1513(b).  Both 1513(a) and (b) prohibit retaliation for attending or testifying at an official proceeding or providing information to a law enforcement officer.  Section 1513(a), under which Jordan was charged, is violated by killing or attempting to kill; 1513(b) is violated by causing bodily injury, property damage, or threats of injury or damage.  Both sections rely on 18 U.S.C.A. § 1515 for definitions, and, in accordance with that statute, an official proceeding must be before a federal court, and a law enforcement officer must be a federal agent.

In *Denham*, the defendants were charged with conspiring to threaten bodily injury to someone who had given information to law enforcement.  During a plea hearing, the court inquired as to whether the defendants had to know that the law enforcement official was federal, and ordered briefing on the issue.  Recognizing the lack of judicial precedent on this issue, the

court conducted an exhaustive review of caselaw, statutory construction, and legislative history to conclude that it could not accept a guilty plea from a defendant who had not admitted knowledge of a federal connection. *Id*. at 574. While rejecting the guilty plea, however, the court further explained that the rejection "does not prejudice the Government's opportunity to prove each essential offense element at trial." *Id*. at 575.[1]

Similarly, a later case from the Fourth Circuit affirmed a conviction under 18 U.S.C. § 1513(b)(1) despite a claim that a jury instruction misstated the law by informing the jury that it did not have to find knowledge that the law enforcement officer was a federal agent. *United States v. Bullock*, 603 F. App'x 157, 159 (4th Cir. 2015). The defendant claimed that the instruction confused the jury as to the charge of retaliation for testimony at an official proceeding. Without discussion, the court stated, "[T]he district court twice properly instructed the jury that to convict Bullock under 18 U.S.C. § 1513(b)(1), it needed to find that Bullock knew the official proceeding was a federal one." *Id*. In yet another case, a West Virginia district court recognized that the requirement of knowledge of the federal character of law enforcement was an unsettled question; however, where the defendant had stipulated as part of his plea agreement to the facts that would establish it, even if the stipulation was the only proof on that issue, and even if the stipulation was inadvertent, the plea agreement would stand. *United States v. Stevens*, No. 2:09-cr-00222-11, 2010 WL 5343189, at *3 (S.D. W.V. Dec. 21, 2010).

In contrast to *Denham*, the Second Circuit reached the opposite conclusion on the issue of knowledge of the federal character of law enforcement, where the provision at issue was §

---

[1] In later proceedings, the defendant was permitted to enter a plea, after the court satisfied itself that the prosecution could prove knowledge of federal involvement, and the defendant, while not admitting guilt, agreed. *United States v. Denham*, 436 F. App'x 627, 628 (6th Cir. 2011).

1513(b)(1),[2] and the question was whether to affirm a conviction in the absence of proof that the defendant knew that the victim had testified in a *federal* proceeding.  *United States v. Escalera*, 957 F.3d 122 (2d Cir.), *cert. denied*, *Cotto v. United States*, 141 S.Ct. 399 (2020).  Like the *Denham* court, the Second Circuit parsed the language of the statute, reviewed similar case law, and considered legislative history, but concluded, "Neither the text nor legislative history of § 1513 demonstrates that Congress considered a defendant's knowledge of the federal nature of the 'official proceeding' to be an essential element of the offense."  *Id*. at 132.  "We hold," the court declared, "that to convict under § 1513(b)(1) the Government is not required to prove that the defendant knew of the federal nature of the proceedings."  *Id*. at 129.

Counsel for Jordan contends that the holding in *Escalera* is "fatally flawed."  Docket No. 211, at 3.  He expresses his disagreement with that court throughout his reply, asserting that the court's analysis "misses the mark;,"  "is puzzling;" is "terribly wrong," and that court's errors were due in large part to it reliance on one of its erroneous prior decisions, *United States v. Jennings*, 471 F.2d 1310 (2d Cir. 1973).  *Id*. at 10, 13, 14.

Unfortunately, for Jordan, this Court does not see the flaws of the *Escalera* decision. In fact, like the *Escalera* court, this this Court believes that "the legislative history confirms that Congress intended the limitation of § 1513 to acts of retaliation for participation in federal proceedings as a jurisdictional element, *i.e*., a  provision to limit the effect of the statute to offenses within Congress's power to regulate."  *Escalera*, 957 F.3d at 132. As the Fifth Circuit has acknowledged, "courts have been consistent in not applying the *mens rea* of statutes to federal jurisdictional elements, unless the language of the statute requires such a result."  *United States v. Terrell*, 700 F.3d 755, 759 (5th Cir. 2012).  *See also United States v. Feola*, 420 U.S.

---

[2]"Whoever knowingly engages in any conduct and thereby causes bodily injury . . . with intent to retaliate . . . for (1) the attendance of a witness or party at an official proceeding . . ."

671, 676 n. 9,  ("[T]he existence of the fact that confers federal jurisdiction need not be one in the mind of the actor at the time he perpetrates the act made criminal by the federal statute."). "These holdings  have been consistently reaffirmed in a variety of contexts," noted the Terrell Court.  700 F.3d at 759.   A person, like Jordan, who stands before the Court having been accused of conspiring to kill another person in retaliation for giving information in an official proceeding is equally culpable whether or not the accused knows the federal nature of the proceeding.  The federal nexus is merely to provide jurisdiction within this Court.  A cramped reading of the statute would only frustrate the intention of Congress.  Surely, Congress desired that those who seek to kill someone in retaliation for providing information to authorities would not turn on whether the perpetrator knew of the proceedings or to whom any reports have been provided.  Such a reading of the statute would allow one to kill another, but seek absolution by saying, "I did not know the victim was providing information to federal authorities."

Because Jordan spent much ink on criticizing the Escalera decision, this Court believes that the points above were worth mentioning.

Returning to the circumstances of this case, in a slightly different situation, the Sixth Circuit affirmed the trial court's refusal to give a jury instruction in a prosecution for retaliatory murder under § 1513(a)(1)(B).  The instruction would have required the jury to explicitly find that the defendant *knew*, rather than *suspected*, that the victim was cooperating with the F.B.I. *United States v. Henderson*, 626 F.3d 326, 341-42 (6th Cir. 2010).  The court stated, "The district court concluded that the substance of Henderson's proposed instruction was substantially covered by the instructions given.  The instructions given by the court required proof that Henderson intentionally killed Bass in retaliation for providing information to the FBI."  *Id*. at 342.

Here, Jordan's arguments must be viewed in light of the procedural posture of this case. Unlike the cases cited above, where the court had the prosecution's evidence before it in reviewing the elements of § 1513, Jordan seeks dismissal of his indictment before all of the evidence has been presented.  There is no corollary in the Federal Rules of Criminal Procedure for the summary judgment mechanism provided in Fed. R. Civ. P. 56.  *United States v. Ferguson*, 142 F.Supp.2d 1350, 1353 (S.D. Fla.2000); *United States v. Marbelt*, 129 F.Supp.2d 49, 56 (D. Mass. 2000) ("'A motion to dismiss an indictment is not a device for a summary trial of the evidence, but rather is directed only to the question of the validity of the indictment on its face." (quoting *United States v. Vicenzi*, 1988 WL 98634, *3 (D. Mass. 1988)).  Fed. R. Crim. P. 12(b)(3)(B)(v) requires that a motion to dismiss an indictment based on failure to state an offense be filed prior to trial "if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits . . . ."   Except where the infirmity is one of law, therefore, pretrial motions to dismiss all or parts of an indictment are not favored in criminal cases.  *United States v. Guthrie*, 720 F. App'x 199, 201 (5th Cir. 2018); *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011); *see also United States v. Sampson*, 371 U.S. 75, 78-79 (1962) ("At this stage of the proceedings the indictment must be tested by its sufficiency to charge an offense.").

Jordan attacks his indictment on two fronts:  (1) it does not include all of the elements of the offense for which he was charged, which, in his opinion, includes knowledge of the federal connection of the officers; and (2) the Government has not identified the evidence that would support that element.  As to Jordan's first contention, the Court has found no Fifth Circuit case deciding whether an indictment must allege that the accused *knew* that the officers to whom information was given were federal agents.  However, in a case considering a *conviction* under §

1513(a), the court examined the claim that the indictment was defective for failing to allege that the law enforcement officers to whom information had been given were federal.  *United States v. Maggitt*, 784 F.2d 590, 593-94 (5th Cir. 1986).[3]  Noting the well-established law that the purpose of an indictment was to inform an accused of the charges being brought against him, the court held that the indictment was sufficient.  "The indictment tracks the statutory language of section 1513 which includes all the elements of the offense."  This is the latest word from the Fifth Circuit on this issue, and this Court is obliged to follow it.  For this reason, it holds, as a matter of law, that counts 6 and 7 of the indictment in this case, which track the language of § 1513(a)(1)(B), are sufficient, and those counts should not be dismissed as failing to state an offense.

As to the second argument, Jordan contends that the counts should be dismissed because the Government has not provided evidence that would support a conviction.  An indictment must enable a defendant to "adequately plead an acquittal or conviction in bar of future prosecutions for the same offense."  *United States v. Mann*, 517 F.2d 259, 268 (5th Cir. 1975).  Thus:

> A defendant may not properly challenge an indictment, sufficient on its face, on the ground the allegations are not supported by adequate evidence, for an indictment returned by a legally constituted and unbiased grand jury, if valid on its face, is enough to call for trial of the charge on the merits.

*Id*. at 267 (citing *Costello v. United States*, 460 U.S. 359, 363 (1956)); *see also United States v. Caldwell*, 302 F.3d 399, 411-12 (5th Cir. 2002).  The state of the evidence at this juncture does not permit dismissal of these counts.  Additionally, although not advancing this argument

---

[3] The indictment read that, on the subject date, the defendant:

> did knowingly threaten to engage in conduct which would cause bodily injury to another person, that is did state to [the victim] that [he] "could have an accident," with intent to retaliate against [the victim] for his having given information to law enforcement officers relating to the commission of the federal offense of armed bank robbery . . . .

directly, Jordan suggests that the Government's presentation to the grand jury could have been similarly lacking.  In *Costello*, the Court refused to quash an indictment where the defendant argued that there could not have been competent evidence before the grand jury.  The Court explained:

> If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment. An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more.

*Id*. (footnote omitted).  *See also, Kaley v. United States*, 571 U.S. 320, 328 (2014):

> We have found no "authority for looking into and revising the judgment of the grand jury upon the evidence, for the purpose of determining whether or not the finding was founded upon sufficient proof." Costello, 350 U.S., at 362–363, 76 S.Ct. 406 (quoting United States v. Reed, 27 F.Cas. 727, 738 (No. 16,134) (C.C.N.D.N.Y.1852) (Nelson, J.)). To the contrary, "the whole history of the grand jury institution" demonstrates that "a challenge to the reliability or competence of the evidence" supporting a grand jury's finding of probable cause "will not be heard." United States v. Williams, 504 U.S. 36, 54, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992) (quoting Costello, 350 U.S., at 364, 76 S.Ct. 406, and **1098 Bank of Nova Scotia v. United States, 487 U.S. 250, 261, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988)). The grand jury gets to say—without any review, oversight, or second-guessing—whether probable cause exists to think that a person committed a crime.

Counts 6 and 7 adequately set out the statutory elements required for a charge under § 1513, and, under Fifth Circuit law, the indictment cannot be dismissed on these grounds.  At this point in the proceedings, a dismissal based on the evidence produced thus far is equally unavailable.  This Court concludes, for all of these reasons, that Jordan's Motion to Dismiss Counts 6 and 7 of the indictment against him should be denied.

**IT IS, THEREFORE ORDERED**, that Defendant Aubrey Jordan's Motion to Dismiss Counts 6 and 7 [Doc. #200] is hereby **DENIED**.

**IT IS SO ORDERED**, this the 13th day of May, 2021.

/s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE